UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| WILLIAM B. CLARK, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No. 2:14 CV 160 |
| MATTHEW DJUKIC, | ) |  |
| DAMIAN MURKS; | ) |  |
| FRANCISCAN ALLIANCE, INC., | ) |  |
| d/b/a St. Margaret Mercy Hospital, | ) |  |
| and TOWN OF SCHERERVILLE, IN, | ) |  |
| Defendants. | ) |  |

## OPINION and ORDER

Plaintiff William B. ("Billy") Clark alleges that, after a traffic stop, he consented to having his blood drawn at St. Margaret's Hospital while in the custody of Schererville police officers, to confirm his blood alcohol level. (DE # 1.) Clark further alleges that, after the blood draw, he was forcibly catheterized against his will so that officers could obtain a urine sample. (*Id.*) Clark sued, amongst others, Franciscan Alliance, Inc. ("Franciscan"), the company doing business as St. Margaret's, for assault, battery, and failure to properly train its employees. (*Id.*)

Franciscan retained Dr. Peter R. Martin ("Dr. Martin") to provide expert opinion testimony pertaining to the action. (DE # 40.) Dr. Martin reviewed certain records and prepared a document containing his conclusions. (DE # 39-1.) Specifically, Dr. Martin opines as follows:

> Billy Clark's ability to accurately perceive the events of May
> 18–19, 2012 and to accurately recall them later was severely

> hampered by the level of intoxication on May 18–19, 2012 resulting from his ingestion of alcohol, cocaine, THC, amphetamine and benzodiazepines in combination with each other.

("The Opinion") (DE # 39-1 at 2–3.)

Plaintiff moves to bar this opinion, pursuant to Federal Rule of Evidence 702. (DE ## 39, 40.) Franciscan filed a response in opposition to the motion (DE # 48), and plaintiff filed a reply in support of the motion (DE # 50).

Later, defendants Matthew Djukic, Damian Murks, and the Town of Schererville filed a reply in support of their own motion for summary judgment. (DE # 61.) The reply brief references Dr. Martin's opinion, as stated above. (*Id*. at 2, n.1.) Plaintiff then filed a second motion related to expert testimony, asking the court to once again bar Dr. Martin from expressing this specific opinion, and to prohibit all defendants from offering the same opinion. (DE # 63.) No response or reply was filed as to the second motion.

I.  **LEGAL STANDARD**

To be admissible, expert testimony must satisfy the conditions of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *United States v. Parra*, 402 F.3d 752, 758 (2005). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under *Daubert,* the court must be satisfied, first, that the expert can testify based on *valid* scientific, technical or specialized knowledge, *i.e.*, whether the expert's testimony is reliable, and second, whether that testimony will be of assistance to the trier of fact. 509 U.S. at 592; *United States v. Welch,* 368 F.3d 970, 973 (7th Cir. 2004); *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 816 (7th Cir. 2004). The reliability issue requires the court to determine whether the expert is qualified in the relevant field and used a reliable methodology to arrive at his or her conclusions. *Zelinski v. Columbia 300, Inc.,* 335 F.3d 633, 640 (7th Cir. 2003); *Smith v. Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir. 2000). A district court's inquiry under *Daubert* is a flexible one, and therefore the court has wide latitude in performing this gate-keeping function and determining whether the expert testimony is reliable. *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011).

## II. DISCUSSION

Plaintiff concedes that Dr. Martin has the educational credentials to qualify as an expert. (DE # 40 at 3.) However, he contends that Dr. Martin's opinion is unreliable, because it is based on insufficient data and speculation. (*See id*. at 3–4.) On May 19, 2012, Plaintiff's blood was drawn, resulting in a .073 reading for alcohol, and his urine tested positive for amphetamines, benzodiazepines, cocaine, and THC. (DE ## 48 at 3, 48-2.) Dr. Martin purports to base his opinion, at least in part, on these results. (*See* DE # 39-1 at 2–3.) Plaintiff does not argue that the results are illegitimate; rather, he argues that Dr. Martin's opinion is not properly based on the data. (*See* DE # 40.)

3

According to Dr. Martin's own deposition testimony, the urine test does not indicate whether the drugs (amphetamines, benzodiazepines, cocaine, and THC) were ingested on Saturday, May 19, 2012, Friday, May 18, 2012, or Thursday, May 17, 2012. (*See* DE # 39-2 at 12–14.) Nevertheless, in his opinion, Dr. Martin asserts that plaintiff's ability to perceive and recall events was impacted by taking all of these drugs (and alcohol) "in combination with each other." (DE # 39-1 at 3.) Given his own testimony, Dr. Martin appears to be speculating that the drugs and alcohol were taken "in combination with each other," since the data does not indicate at what time over the span of the three-day period each of the drugs was ingested.

Furthermore, Dr. Martin's opinion—unlike his deposition testimony—seems to ignore the possibility that the drugs may have been ingested on May 17, 2012, because it specifically indicates that plaintiff was "severely hampered by the level of intoxication on *May 18–19, 2012*," without any reference to a level of intoxication on May 17, 2012. (DE # 39-1 at 3 (emphasis added)). To state that the drugs would affect plaintiff's perception and recall of events on May 18 and 19, rather than May 17, appears to be unwarranted speculation.[1]

For the first part of the *Daubert* test (determining the reliability of Dr. Martin's expert testimony), the court must consider "whether the testimony has been subjected

---

[1] It is unclear to the court whether there is a possibility that drugs ingested on May 17 could impact perception and recall of events that occurred on May 18 and 19. However, Franciscan has provided no evidence suggesting this is a possibility. (*See* DE # 48.) Furthermore, there is no indication in Dr. Martin's opinion that he accounted for the possibility that the drugs may have been ingested on May 17, 2012. (*See* DE # 39-1.)

4

to the scientific method, ruling out any subjective belief or unsupported speculation."

*Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002). "The whole point of *Daubert* is that experts can't speculate." *DePaepe v. General Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) (internal quotation marks omitted).

In the case at hand, Dr. Martin speculates as to when plaintiff ingested cocaine, THC, amphetamine and benzodiazepines. This makes his opinion unreliable, as it is not properly based on the urine test data that purportedly support his conclusions. Accordingly, the court must rule out any opinion based on this speculation.

It is possible that the facts of this case could properly support some other opinion that Dr. Martin may offer, perhaps one that is expressed conditionally or outlines which assumptions of fact he has made in reaching his conclusions.[2] But, it is not the court's place to speak for Dr. Martin. As the opinion is currently written, it is unreliable. Therefore, the court will bar Dr. Martin from expressing his specific opinion pertaining to plaintiff's ability to perceive and recall events, as it is expressed in the written report (DE # 39-1), and will prohibit all defendants from offering the opinion.

## III. CONCLUSION

For the foregoing reasons, the court **GRANTS** plaintiff's motions (DE ## 39, 63), as detailed above. Additionally, the court **STRIKES** footnote 1 and the following passage from defendants' reply brief (DE # 61): "however, in light of Plaintiff's level of

---

[2] If Dr. Martin were to offer a different opinion, this could potentially raise other issues that plaintiff includes in his brief (DE # 40). The court need not reach these issues yet, and it will not provide a ruling on a hypothetical opinion at this time.

5

intoxication on May 18/19, 2012 his ability to accurately recall the events of that evening is questionable."

                                                 **SO ORDERED.**

Date: September 18, 2017

                                          s/James T. Moody_____
                                          JUDGE JAMES T. MOODY
                                          UNITED STATES DISTRICT COURT