UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| WILLIAM B. CLARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:14 CV 160 |
| | ) |
| MATTHEW DJUKIC, | ) |
| DAMIAN MURKS; | ) |
| FRANCISCAN ALLIANCE, INC., | ) |
| d/b/a St. Margaret Mercy Hospital, | ) |
| and TOWN OF SCHERERVILLE, IN, | ) |
| | ) |
| Defendants. | ) |

## OPINION and ORDER

Plaintiff William B. ("Billy") Clark alleges that, after a traffic stop, he was forcibly catheterized against his will so that officers could obtain a urine sample. (DE # 1.) Clark sued those officers, Matthew Djukic ("Djukic") and Damian Murks ("Murks"), as well as the Town of Schererville, Indiana ("the Town"), and Franciscan Alliance, Inc. (*Id.*)

The matter is now before the court on a motion for summary judgment brought by defendants Djukic, Murks, and the Town (collectively, "the Town Defendants" or "defendants"). (DE # 46). Plaintiff filed a response to the motion (DE # 53) and defendants filed a reply brief (DE # 61). Accordingly, the motion is fully briefed and is ripe for ruling.

## I. BACKGROUND[1]

On May 18, 2012, Schererville Police Officer Matthew Djukic was on patrol when he encountered plaintiff's vehicle. (DE # 47-1 at 2.) Djukic contends that he suspected the driver was either distracted or driving under the influence. (*Id.* at 5.) Djukic activated his lights, and plaintiff pulled over in response at 10:57 p.m. (*Id.* at 2, 6.) Djukic is a K-9 officer who is unable to transport persons following a traffic stop, so he made a report to dispatch, and, shortly thereafter, Officer Damian Murks arrived on scene. (*Id.* at 5-6, 8.)

According to Djukic, plaintiff consented to a K-9 search of his vehicle. (*Id.* at 34.) Djukic asserts that he found marijuana residue in the vehicle. (*Id.* at 20.) Djukic then administered field sobriety tests and a Portable Breath Test. (*Id.* at 16, 25, 32.) Plaintiff registered a blood alcohol level of .11 on the test. (*Id.* at 25.) Plaintiff then consented to go to the hospital to provide bodily fluid samples. (DE # 54-1 at 3.)

Murks transported plaintiff to the St. Margaret Mercy Hospital (the "hospital"), which was operated by defendant Franciscan Alliance. (DE # 47-1 at 20.) Plaintiff arrived at the hospital in handcuffs, where Djukic informed staff that plaintiff was at the hospital to provide bodily fluid samples. (DE ## 47-1 at 21; 47-2 at 4.) Initially, plaintiff's blood was drawn by a nurse with his consent. (DE ## 1 ¶35; 54-1 at 6.) Following the blood test, plaintiff consented to a urine screen test. (DE # 54-1 at 7.) It is

---

[1] In the summary that follows, the court refers only to undisputed facts, or, if there is a dispute, notes that it exists. This summary provides an overview. Additional relevant undisputed facts will be referred to in the analysis that follows.

uncontested that plaintiff agreed to urinate into a cup, but was not able to voluntarily urinate before he was catheterized. (*Id.* at 7–9.) After that point, the witnesses' stories diverge, as each individual provides very different testimony regarding how plaintiff's urine was ultimately drawn through a catheter.

According to plaintiff, his right hand was handcuffed to the corner of the bed while he attempted to urinate into the cup. (DE # 54-1 at 8.) After some time, Djukic instructed Nurse Tina Partain ("Partain") to catheterize plaintiff to remove urine. (*Id.* at 9.) Plaintiff asserts that he did not consent to this. (*Id.* at 7.) He further testifies that Djukic held him down and was "laying on top of [him]" during the catheterization. (*Id.* at 2.)

According to Partain, plaintiff's handcuffs were removed after he arrived at the hospital, before his blood and urine were drawn. (DE # 54-2 at 7.) She testifies that Dr. Bryan Swanson ordered her to catheterize plaintiff, after he was unable to urinate. (*Id.* at 30-31.) She then purportedly asked plaintiff if he wanted to be catheterized, to which he responded "Yeah, let's go." (*Id.* at 31.) She testifies that she then inserted the catheter, while Djukic stood at the door approximately seven to eight feet away from her. (Id. at 37.) According to Partain, the catheter only remained inserted into plaintiff's urethra for a period of "seconds." (*Id.* at 38.)

Djukic claims that—not only did he not order the catheterization—it was actually plaintiff's idea to use the catheter. (DE # 47-1 at 30.) Djukic says plaintiff was not handcuffed to the bed, but he admits that he did hold plaintiff's shoulder during the

3

process to avoid him from jumping during the insertion of the tube. (*Id.* at 30-31.) Djukic also asserts that plaintiff "just laid there" with the catheter inserted into his urethra for a period of time that "really seemed like a while." (*Id.* at 31-32.)

Meanwhile, Dr. Swanson has no recollection of anything from the evening in question and does not recall ordering a catheterization. (DE # 54-3 at 5-6.) He also reviewed the written order for the catheterization and noted that it was not in his handwriting. (*Id.* at 6-7.)

Based on these events, plaintiff filed a complaint on May 9, 2014, alleging that Djukic, Murks, and the Town violated plaintiff's Fourth and Fourteenth Amendment rights (along with an additional claim against Franciscan Alliance, Inc.). (DE # 1.) The court previously denied a motion for summary judgment filed by Franciscan Alliance, Inc. (DE # 64.) The court now turns to the Town Defendants' motion for summary judgment. (DE # 46.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving

4

party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. Once the moving party has met his burden, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003) (citing *Celotex,* 477 U.S. at 324). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966 (7th Cir. 1998).

## III. DISCUSSION

The Town Defendants move for summary judgment on all claims against them. (DE # 46.) They enumerate seven arguments in support of their motion. (*Id.*) The court will discuss each of defendants' arguments, in turn.

A. *Claim Regarding the K-9 Search of Plaintiff's Vehicle*

Plaintiff alleges, in his complaint, that Officer Djukic's K-9 search of his vehicle constituted a violation of his Fourth Amendment Rights. (DE # 1 ¶ 58(a).) Defendants move for summary judgment on this claim, on the basis that plaintiff consented to the search. (DE # 47 at 12.) Alternatively, defendants argue that probable cause existed for the search. (*Id.* at 13.)

In his response brief, plaintiff concedes that the search of his vehicle was either consensual or was otherwise not a violation of his rights under 42 U.S.C. § 1983. (DE # 53 at 5.) Since plaintiff has abandoned his claim, the court will grant summary judgment on this claim.

B. *Claims Against Murks*

Defendants argue that Officer Murks is entitled to summary judgment because he was not personally involved in the alleged constitutional deprivations. (DE # 47 at 13.) Plaintiff agrees that Murks was not present during the catheterization.[2] (DE # 53 at 5.) Further, he concedes that Murks is entitled to summary judgment. (*Id.*) Therefore, the court will grant summary judgment as to all claims against Murks.

C. *Claims Against the Town of Schererville, Indiana*

Plaintiff alleges that the Town is liable under 42 U.S.C. § 1983. (DE # 1 at 13.) Defendants argue that summary judgment is appropriate in favor of the Town, as well

---

[2] Officer Murks was present during the K-9 search, but plaintiff has abandoned his claim regarding that search. (DE # 53 at 21.)

as in favor of the officers in their official capacities, because plaintiff has not demonstrated any *Monell* claim. (DE # 47 at 24.)

To bring a § 1983 claim against the Town, plaintiff must demonstrate that a government policy or custom inflicted his injury. *Mayes v. City of Hammond, Ind.*, 442 F. Supp. 2d 587, 641 (N.D. Ind. 2006) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). Plaintiff argues that such a policy is established because the Town failed to train Officer Djukic regarding detainees' constitutional rights. (DE # 53 at 20.) Inadequate police training can establish a "policy" for *Monell* purposes, but only where it amounts to "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 498 U.S. 378, 388 (1989). But, plaintiff provides no evidence of this failure to train. He only provides a quote from Djukic regarding consent that has no bearing on his training. (DE # 53 at 20.)

Additionally, the court cannot infer inadequate training based only on this single incident with Officer Djukic. The Supreme Court rejected such an inference in *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985), holding that it was reversible error to allow a jury to infer solely from facts surrounding a single incident that the incident was attributable to inadequate training amounting to deliberate indifference. *Id.* This same idea is also alluded to in *Canton*. 489 U.S. at 390 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city . . . .").

Since plaintiff has failed to provide evidence of an adequate *Monell* policy, or of any failure to train, the court finds that summary judgment is appropriate on this claim.

7

D. *The Record*

In their brief, defendants point out that plaintiff relies heavily on his own deposition testimony to establish material issues of fact. (*See* DE # 47 at 11.) They argue that the court should not consider this testimony, because it is "blatantly contradicted by the impartial records." (*Id.*) For support, they rely on *Scott v. Harris*, 550 U.S. 372, 380 (2007). According to that decision, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* Defendants believe that plaintiff's testimony is refuted by police radio logs and medical records, which they classify as "impartial" records. (DE # 47 at 11–12.)

Plaintiff agrees that his testimony regarding Murks being present for the catheterization is discredited, and he has since abandoned his claims against Murks. (DE # 53 at 5.) However, the court disagrees that plaintiff's other testimony about the catheterization should be discounted. Unlike in *Scott*, in the case at hand there is no single consistent story told by "the record." As outlined above, the various witnesses to plaintiff's hospitalization have provided inconsistent testimony regarding who ordered the catheterization, how long it lasted, and where each person was standing in the room. (*See* Background.) Thus, plaintiff's version does not stand in opposition to a monolithic "record." Instead, it stands as one version of events among many.

8

Given the discrepancy in these stories, it is not the case that no reasonable jury could believe plaintiff's version of the events. Accordingly, the court will not ignore plaintiff's deposition testimony and summary judgment is not appropriate based on this argument.

  E.  *Fourth Amendment Claims Against Djukic*

    i.  *Search and Seizure*

Plaintiff alleges that the insertion of the catheter violated his right to be free from unreasonable searches and seizures, under the Fourth Amendment. (DE # 1 ¶¶ 58–60, 66.) Defendants move for summary judgment on the claim and assert "[i]t is undisputed that Dr. Swanson ordered the catheterization, and Officer Djukic had nothing to do with that decision." (DE # 47 at 15–16.) Based on that assertion, defendants rely on two cases in which the court found no liability for officers who played no role in the decision to catheterize the respective plaintiffs. (*Id*. at 16–18 (citing *Rudy v. Village of Sparta*, 990 F. Supp. 924, 929 (W.D. Mich. 1996) (finding no violation where the evidence clearly indicated that the violation was caused *solely* by the doctor's decision to order the catheterization and the technician's decision to follow the order) and *Sullivan v. Bornemann*, 384 F.3d 372, 376–78 (7th Cir. 2004) (holding officers' acquiescence to a nurse's request to restrain the plaintiff during the catheterization did not violate his Fourth Amendment rights where the officers had no input into the plaintiff's medical care)).)

Nevertheless, defendants are incorrect that this matter is "undisputed," because plaintiff clearly disputes that Officer Djukic had nothing to do with the decision to catheterize him. Specifically, plaintiff asserts that Djukic instructed Partain to catheterize him. (DE # 54-1 at 9.) Therefore, when viewing the evidence in the light most favorable to plaintiff, Djukic ordered the catheterization, distinguishing this case from *Rudy* and *Sullivan*.

Defendants then cite *Schmerber v. California*, 384 U.S. 757, 771 (1966) in which the Supreme Court approved of an involuntary blood draw without a warrant, where probable cause existed. Defendants attempt to analogize this to the case at hand. However, *Schmerber* does not approve of all bodily intrusions at all times. *Id.* at 769–70.

The touchstone of the Fourth Amendment is reasonableness. *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). The reasonableness of bodily intrusions depends on a case by case approach, and *Schmerber* provides the analytical framework for analyzing such cases. *Winston v. Lee*, 470 U.S. 753, 760 (1985). This "*Schmerber*" balancing test suggests the following factors for consideration: "(1) the extent to which the procedure may threaten the safety or health of the individual; (2) the extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity; and (3) the community's interest in fairly and accurately determining guilt or innocence." *Elliott v. Sheriff of Rush County, Ind.*, 686 F. Supp. 2d 840, 859 (S.D. Ind. 2010) (citing *Winston*, 470 U.S. at 761–62) (quotation marks omitted).

In the present case, even if a catheterization does not threaten plaintiff's health and safety, it certainly intrudes upon his bodily integrity, privacy, and dignity, by requiring him to submit to an involuntary entry into his urethra. Meanwhile, the community's interests here are limited. As plaintiff points out, his blood was already drawn and tested. (DE # 53 at 13.) Additionally, there is no indication that an immediate urinalysis was necessary to prevent the presence of drugs from dissipating from plaintiff's urine. (*See id*.) This distinguishes the case from *Schmerber*, where a blood draw was found to be reasonable due to exigent circumstances, because "the percentage of alcohol in the blood begins to diminish shortly after drinking stops." *See*, 384 U.S. at 770. Unlike the officer in Schmerber, Djukic faced no such emergency in this case. *See id*. ("Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned.")

In *Elliott*, a district court judge, analyzed a similar fact pattern to the one at issue, using the *Schmerber* factors. *See Elliott*, 686 F. Supp. 2d at 859. In that case, an arrestee suspected of driving under the influence consented to a urine test but was unable to urinate voluntarily. *Id*. at 851. Nevertheless, the officers ordered a catheterization of the arrestee, handcuffed him to a table, and held him down during the procedure. *Id*. at 851–52. Ultimately, the court weighed the factors and concluded that "a law enforcement officer, who orders a medical catheterization and has personal

involvement in the procedure, violates an individual's Fourth Amendment rights." *Id.* at 861. The court here agrees.

Defendants also cite *Sparks v. Stutler*, 71 F.3d 259 (7th Cir. 1995) in support of their argument that there was no Fourth Amendment violation here. However, this case is distinguishable from the present case, since the plaintiff in *Sparks* was a prisoner. As the court explained in *Elliott*, 686 F. Supp. 2d at 863 (internal citations omitted):

> In *Sparks*, the plaintiff was a prison inmate at the time of the search of his person. As such, he enjoyed less privacy rights than the [a non-prisoner plaintiff]. Thus, the balancing test is weighted more in favor of interests of prison officials in preserving order, discipline, and security.

In the case at hand, a genuine issue of material fact exists as to Djukic's participation in ordering and implementing the catheterization. But, when viewing the facts in the light most favorable to plaintiff the balancing test weighs in favor of plaintiff's interests. Accordingly, Djukic's actions would amount to a violation of plaintiff's Fourth Amendment rights and the court cannot grant summary judgment on this claim.

    *ii.*    *Excessive Force*

Plaintiff also brings a Fourth Amendment claim for use of excessive force. (DE # 1 at 10.) Plaintiff alleges that Djukic used excessive force when he restrained plaintiff during the forced catheterization. (*Id.*) Defendants assert that this claim must be assessed under a "reasonableness" standard. (DE # 47 at 18 (citing *United States v. Ramirez*, 523 U.S. 65, 71 (1998)).) In making this reasonableness determination, courts

must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the "countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Additionally, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396–97.

Plaintiff's testimony creates an issue of fact regarding whether or not Djukic was "laying" on him while he was catheterized against his will. In making the reasonableness determination at the summary judgment stage, the court must view the facts in the light most favorable to plaintiff. Therefore, the court must decide whether Djukic's restraint of plaintiff, by laying on him, was reasonable, "in light of the facts and circumstances confronting [him]." *Id*. at 397.

Defendants argue that it is "undisputed that the force applied was reasonable to prevent [p]laintiff from incurring unnecessary pain and assist the medical procedure." (DE # 47 at 19.) The court disagrees, and once again must question defendants' understanding of the word "undisputed." Plaintiff directly disputes the reasonableness of Djukic's actions, pointing out that these circumstances were not tense, uncertain, or rapidly evolving. (DE # 53 at 14.) According to plaintiff's testimony, he was handcuffed to a bed and was simply attempting to urinate into a cup. Such a situation would not force Djukic into making a split-second decision. Additionally, the government's

13

interests in retrieving the evidence of the urine test did not outweigh plaintiff's interests at this time, because the urine test could have been completed voluntarily, as soon as plaintiff was next able to pass urine, without damaging the test's ability to determine what drugs were in plaintiff's system when he was driving. Furthermore, Djukic did not simply restrain plaintiff's arms, he purportedly laid on him while he was already handcuffed, constituting a greater and less reasonable use of force. *Cf. Rudy v. Vill. of Sparta*, 990 F. Supp. 924, 928–29 (W.D. Mich. 1996), aff'd, 129 F.3d 1265 (6th Cir. 1997) (finding no excessive force claim where an officer held the plaintiff's arm).

In light of those circumstances, and in light of plaintiff's testimony that Djukic ordered the catheterization himself, laying on plaintiff to allow a forced catheterization to take place was not reasonable. The court will not grant summary judgment on this claim.

### F. Qualified Immunity

Defendants argue that Djukic is entitled to qualified immunity on plaintiff's Fourth Amendment claims.[3] (DE # 47 at 20–24.) "The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). When

---

[3] Defendants do not distinguish between the search and seizure and excessive force claims for qualified immunity purposes. (*See* DE # 47 at 20–24.) In fact, the cases defendants' cite and their argument in this section focus entirely on the Fourth Amendment search and seizure claim. Therefore, the court will also not draw a distinction between the two claims for qualified immunity purposes.

confronted with an assertion of qualified immunity, the court must address two questions: (1) "whether the plaintiff's allegations make out a deprivation of a constitutional right" and (2) "whether the right was clearly established at the time of defendant's alleged misconduct." *Id*. Once qualified immunity is raised, it is plaintiff's burden to defeat it. *Wheeler v. Lawson*, 539 F.2d 629, 639 (7th Cir. 2008).

In the previous section, the court found that the evidence before the court, viewed in a light most favorable to plaintiff, sufficiently makes out a deprivation of the Fourth Amendment. Specifically, the court found that catheterizing plaintiff without a warrant and without his consent, at the direction of Officer Djukic, could amount to a violation of plaintiff's Fourth Amendment right against unreasonable search and seizure. Now the court must determine whether this right was clearly established.

The clearly established prong may be satisfied if (1) a closely analogous case establishes that the conduct was unconstitutional or (2) the violation is so obvious that a reasonable state actor would know that what they are doing violates the Constitution. *Siebert v. Severino*, 256 F.3d 648, 654–55 (7th Cir. 2001).

First, the court will look to controlling precedent. The *Schmerber* case is not closely analogous to the case at hand, because it involves a blood test, rather than a catheterization. 384 U.S. at 759. However, it establishes that a Fourth Amendment violation may occur where there is a bodily intrusion without a warrant or a valid emergency. *Id*. at 770.

15

Defendants point to *Sparks* and *Sullivan* as two examples where qualified immunity was granted to officers in situations involving the use of a catheter. (DE # 47 at 22–23.) However, both of these cases are distinguishable from the situation of the present case, for reasons described earlier in this order.

Without a closely analogous Supreme Court or Seventh Circuit case, the court turns to other district court cases. Plaintiff and defendants each cite *Lockard v. City of Lawrenceburg, Ind.*, 815 F. Supp. 2d 1034, 1048 (S.D. Ind. 2011), where qualified immunity was granted for defendants. However, in that case the court never reached the first prong of qualified immunity: whether or not there was a violation. *See id*. Rather, the court held it was not clearly established that a Fourth Amendment violation occurred where defendants had obtained a search warrant stating "[y]ou are hereby authorized and ordered . . . to obtain and remove a . . . urine sample."[4] *Id*. at 1047, 51.

Meanwhile, the *Elliott* case, discussed above, is a closely analogous case to our facts, in which the court did reach a conclusion on the first prong of qualified immunity: concluding that a violation did occur. *Elliott*, 686 F. Supp. 2d 840 (S.D. Ind. 2010). In that case the district court denied qualified immunity for an officer, finding the violation fell into the "obvious category" where an officer ordered a plaintiff to submit to a catheterization, against his will, and without the issuance of a search warrant giving specific authorization. *Id*.

---

[4] Importantly, the underlying conduct in *Lockard*, occurred almost one year before the *Elliott* decision, explaining (at least in part) the Lockard court's conclusion that the violation was not clearly established. *Lockard*, 815 F. Supp. 2d at 1048.

The court here agrees and finds that Djukic's alleged violation was similarly obvious, when the facts are viewed in the light most favorable to plaintiff. Additionally, the existence of *Elliott* itself demonstrates that a closely analogous case had clearly established Djukic's actions as a constitutional violation. Furthermore, *Elliott* does not stand alone, as the court there recognized a "trend in the case law recognizing the right of all citizens to be free from unwarranted medical procedures without the benefit of a search warrant authorized by a detached, neutral judicial officer." *Id*. at 863–64.

Consequently, plaintiff has met his burden on both prongs of the qualified immunity test. Djukic is, therefore, not entitled to qualified immunity at the summary judgment stage.

G.   *Procedural Due Process Claim*

In addition to his Fourth Amendment claims, plaintiff contends that the seizure of his urine violated his Fourteenth Amendment procedural due process rights. (DE # 1 ¶¶ 84–89.) Defendants argue that this claim fails because a procedural due process claim, under the Fourteenth Amendment, must fail if the state provides a meaningful postdeprivation remedy for the loss. *Parratt v. Taylor*, 451 U.S. 527, 535–42 (1981), overruled in part on other grounds; *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Plaintiff argues that the *Parratt* doctrine does not apply here because that doctrine does not apply to substantive constitutional claims. (DE # 53 at 15 (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 871 (7th Cir. 1983)).) Plaintiff is correct that *Parratt* does not bar his Fourth Amendment claims. However, *Wolf-Lillie* does not overrule *Parratt*; it

17

only distinguishes substantive claims from the general rule. *See Wolf-Lillie*, 699 F.2d at 872 ("*Parratt* is thus not applicable to instances where the substantive guarantees of the Constitution are alleged to be violated, *as opposed to alleged violations of due process*." (emphasis added)); *see also Byrd v. Stewart*, 811 F.2d 554, 554–55 (11th Cir. 1987) ("If plaintiff intends to allege that the officers have failed to return the items seized without due process of law, such a procedural due process claim would be barred by *Parratt* . . . . If the plaintiff intends to allege that the search and seizure itself was unlawful, such a fourth amendment claim would not be barred by the *Parratt* doctrine.").

Defendants argue that Indiana provides satisfactory postdeprivation remedies for plaintiff through tort law, and thus plaintiff has no claim for procedural due process. (DE # 47 at 19–20 (citing *Kemezy v. Peters*, 622 N.E.2d 1296 (Ind. 1993) and *Willis v. State*, 780 N.E.2d 423, 427–28 (Ind. Ct. App. 2002)).) The Seventh Circuit has explained that, where state tort remedies exist, the state "has done all that the Fourteenth Amendment requires in this context to guarantee [the plaintiff] due process of law." *Wolf-Lillie*, 699 F.2d at 871. Plaintiff does not argue that these remedies are inadequate, rather, he only argues that the *Parratt* doctrine does not apply to his procedural due process claim because he has also brought Fourth Amendment claims. The court disagrees.

Because it is uncontested that postdeprivation remedies in Indiana tort law are adequate, the court finds that plaintiff cannot maintain a procedural due process claim. The court will grant summary judgment on this claim.

## IV. CONCLUSION

For the foregoing reasons, the court

(1) **GRANTS in part** the Town Defendants' Motion for Summary Judgment (DE # 46) as to all claims against Damian Murks, all claims against the Town of Schererville, Indiana, plaintiff's claim regarding the K-9 search of his vehicle, and plaintiff's claim for violation of procedural due process;

(2) Otherwise **DENIES in part** the Town Defendants' Motion for Summary Judgment (DE # 46) as to all other claims;

(3) **DIRECTS** the Clerk to dismiss defendants Damian Murks and the Town of Schererville, Indiana, from this case, because no claims remain pending against them; and

(4) **ORDERS** the parties to file a joint status report regarding their willingness to engage in a settlement conference before a Magistrate Judge by October 10, 2017. A trial date will be set under a separate order.

**SO ORDERED.**

Date: September 25, 2017

s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT